*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. E. MEDRANO, Minor.

UNPUBLISHED
January 27, 2025
10:54 AM

No. 369585
Macomb Circuit Court
Family Division
LC No. 22-000158-NA

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

The trial court terminated respondent-father's parental rights to his minor child, JEM. Respondent-father argues on appeal that the Department of Health and Human Services (DHHS) failed to make reasonable efforts toward reunification and that termination was not in JEM's best interests.[1] We affirm.

## I. BACKGROUND

Children's Protective Services (CPS) became involved in this case immediately after JEM's birth, when respondent-mother exhibited concerning behavior at the hospital. Respondent-father had dropped off respondent-mother at the hospital, and he later told CPS that he was unaware of JEM's birth. JEM was removed from respondents' care because of issues that included a history of domestic violence between respondents, lack of preparedness to take JEM home, respondent-mother's mental-health concerns, and respondents' previous CPS involvement with another child, IM. IM was, at the time of these proceedings, living in a guardianship placement.

The trial court adopted a parent-agency treatment plan, under which respondent-father was required to do a substance-abuse assessment, drug screens, a psychological evaluation, and any necessary mental-health treatment resulting from the psychological evaluation. Respondents were

---

[1] The trial court also terminated the parental rights of respondent-mother, but she is not a party to this appeal.

also required to attend parenting classes and an infant mental-health class. Further, respondents were required to maintain appropriate housing and income and maintain regular contact with the DHHS, have regular parenting time with JEM, and attend JEM's medical appointments. Finally, respondent-father was ordered to undergo a domestic-violence evaluation.

The trial court found, at a hearing in October 2022, that respondents were noncompliant with services, although they were participating in most visits and housing was appropriate. The DHHS provided respondents with bus passes due to transportation issues. Respondent-father had reported that he had income and had set up the therapy-intake appointment, but he provided no documentation. The DHHS had referred respondents to a "parent partner," but respondents failed to respond to the partner, so the DHHS needed to refer them again.

In December 2022, when JEM was six months old, the foster-care agency planned to move JEM from his licensed foster home to the home of respondent-father's first cousin, TM, and TM's wife, JM. At the request of JEM's foster parents, the Foster Care Review Board (FCRB) investigated the proposed placement move and concluded that it did not support the move because it was not in JEM's best interests due to JEM's wellbeing in his foster-care placement and concerns about the proposed relative placement. At a hearing on the issue, the lawyer-guardian ad litem (L-GAL) agreed with the FCRB, explaining that JEM had been in placement since he was born, and the DHHS could have placed him with the relatives within the first 90 days with "no questions asked," but the relatives had not decided to be a placement within those 90 days. The L-GAL explained that, because the goal was reunification, JEM would be moving back in with respondents when they were ready, so there was no reason to add a move and cause attachment issues. The referee denied the request for a change of placement, stating that it did not want JEM to be moved multiple times when the goal was reunification, and the trial court signed the order.

Respondent-father objected to the trial court's decision and argued that placing JEM with TM and JM would foster connection between JEM and his culture and also with his sibling. The trial court found that the objection was untimely and that, under MCR 3.991(A)(4),[2] the trial court could not consider the objection because it had already signed the order. Finally, the trial court explained that it would not have found that the referee's order was clearly erroneous to support a change. The trial court ordered that JM be permitted to supervise respondent-father's visits with JEM.

Throughout the proceedings, respondent-father missed 17 of the 56 parenting times offered to him. Respondent-father completed supportive visitation in April 2023, at which point he began to have visits with JEM supervised by JM. An incident occurred in August 2023, however, when respondents showed up to IM's relative placement, and respondent-mother tried to pull IM out of his car seat. The police were called. After this situation, the foster-care worker determined that it was not safe for parenting time to occur outside of the agency, and respondent-father stopped attending visits, claiming that he was unable to get to the agency. The foster-care worker offered respondent-father bus passes, but respondent-father did not exercise his parenting time from the end of July 2023 through the time of the termination proceedings, in the middle of December 2023.

---

[2] MCR 3.991(A)(4) provides that after entry of an order, "a request for review may not be filed. Reconsideration of the order is by motion for rehearing under MCR 3.992."

Respondent-father was also offered the opportunity to attend eight of JEM's medical appointments, but he did not attend any. Respondent-father attended parenting classes, but did not benefit from them, according to testimony during the termination trial. Respondent-father also did not provide the foster-care worker with verification of employment, income, or appropriate housing.

Respondent-father completed a substance-abuse assessment, and 10 drug screens, testing negative, but he missed 11 screens. Respondent-father underwent a psychological evaluation in January 2023 and domestic-violence assessment in June 2023, but he was not candid with the domestic-violence evaluator. Because of his lack of candor, the evaluator was unaware that respondent-father was the victim of the domestic violence, rather than the perpetrator. Respondent-father was referred to individual therapy, and he attended the intake, but no additional appointments.

At the termination trial, the foster-care worker testified that the DHHS had considered a guardianship instead of termination, but it had concerns because of how respondents handled IM's placement in a relative guardianship and, because of JEM's age, adoption was his best option.

The trial court subsequently found that statutory grounds existed to terminate respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The trial court also found that termination was in JEM's best interests and that the DHHS made reasonable efforts toward reunification. The trial court noted that JEM needed permanency, which respondent-father could not provide. JEM was having his needs met in his placement. Further, the trial court found that there was no evidence that respondent-father had a bond with JEM, specifically finding that respondent-father "appears to be under the false presumption that the child belongs with the mother and he needn't step up." The trial court explained that respondent-mother had been incarcerated at times during the proceedings, and, when she was released, respondent-father's participation in the treatment plan ceased. Finally, the trial court explained that the foster parents and family members had indicated interest in adopting JEM.

Respondent-father now appeals.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Respondent-father argues that the trial court erred by finding that the DHHS made reasonable efforts toward reunification. "In order to preserve an argument that petitioner failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (cleaned up). Respondent-father did not raise the issue of inadequate services during these proceedings. Therefore, the issue is unpreserved. We review for plain error unpreserved claims in termination proceedings. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). To avoid forfeiture under the plain-error rule, respondent must establish that an error occurred, the error was clear or obvious, and the error affected substantial rights. *Id*.

Generally, absent aggravating circumstances, the DHHS is required to make reasonable efforts to reunite a child with his or her family. *Atchley*, 341 Mich App at 338. See also MCL

712A.19a(2). Although the DHHS has the responsibility to make reasonable efforts and provide services with the goal of reunification, "there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). A respondent-parent must, therefore, participate in services *and* demonstrate benefit from the provided services. *Atchley*, 231 Mich App at 339.

In this case, a service plan was put into place in July 2022, requiring respondent-father to engage in various services. Respondent-father's participation was sporadic, however, including attending only 10 out of 21 of the scheduled drug screens, not attending any therapy appointments after completing the intake, and failing to maintain consistent communication with the DHHS. Respondent-father was dishonest with the domestic-violence evaluator,[3] and he did not provide the DHHS with requested documentation. Further, respondent-father stopped attending visits, despite the DHHS offering bus passes. Respondent-father specifically argues that he was not given adequate time to complete his service plan. The termination trial began in December 2023, however, almost 18 months after the service plan was initiated. Respondent-father's lack of communication and participation in services indicated it is likely that he would not have completed, or benefited from, his service plan, even if granted more time.

Respondent-father also specifically argues that the DHHS did not make reasonable efforts to place JEM in a relative placement. Under MCL 712A.13b(3),[4] when a foster parent appeals a change-in-placement, the FCRB shall investigate the proposed change and report its findings and recommendations, including whether it is in the child's best interests. If the FCRB "determines that the move is not in the child's best interest, the agency shall maintain the current placement until a finding and order by the court." MCL 712A.13b(5).

In this case, the foster-care agency requested to move JEM from his licensed foster-care home to a relative placement, but the FCRB determine that the move was not in JEM's best interests. The trial court agreed, explaining that the goal remained reunification and it would not be in JEM's best interests to be moved multiple times. The DHHS, therefore, exercised diligence regarding relative placement. By the time JM and TM were presented as potential relative placements, JEM had already established a bond with his foster family. The trial court properly addressed respondent-father's concerns about JEM's cultural heritage by allowing JM to supervise

---

[3] To be clear, neither the trial court nor this Court holds against respondent-father that he was the *victim* of domestic abuse. Our caselaw makes clear that being a victim of domestic abuse is not a relevant ground with respect to termination. See *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022). With that said, it was not error for the trial court to consider respondent-father's lack of candor with respect to that domestic abuse. Moreover, it is clear from the record that the trial court placed minimal weight on that matter. Finally, respondent-father has not raised this issue as a ground for appellate relief.

[4] At the time of these proceedings, the wording of MCL 712A.13b(3) differed slightly from the present statute, but the substance of MCL 712A.13b, requiring the FCRB to investigate upon a foster home's appeal of a proposed placement change and make a recommendation, remains substantively the same.

visits. Moreover, respondents' behavior with IM in his relative placement hindered JEM's opportunity for connection with relatives.

Whether JEM was placed with relatives or in a nonrelative foster home during proceedings does not change the fact that the DHHS offered respondent-father extensive services to facilitate completion of his service plan, and respondent-father failed to participate consistently in, or benefit from, the plan. The trial court did not err by finding that the DHHS made reasonable efforts toward reunification.

## B. BEST INTERESTS

Next, respondent-father argues that the trial court erred by finding that termination was in JEM's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). On appeal, respondent-father does not dispute statutory grounds. We review for clear error a trial court's determination about a child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A finding is clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake. *Atchley*, 341 Mich at 338. Whether termination is in a child's best interests must be established by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

In a best-interest determination, the trial court may consider factors including the bond between child and parent; parenting ability; the child's need for permanency, stability, and finality; and the advantages of the foster home over the parent's home. *Olive/Metts*, 297 Mich App at 41-42. The trial court may also consider the parent's history of domestic violence, compliance with a service plan, visitation history, the child's well-being in care, and the possibility of adoption. *White*, 303 Mich App at 714. "[T]he focus at the best-interest stage has always been on the child, not the parent." *Moss*, 301 Mich App at 87.

The trial court did not err by determining that termination was in JEM's best interests. JEM was doing well in his foster-care placement, and his needs were being met. The trial court properly relied on JEM's need for permanency, and JEM's foster parents and relatives, had indicated interest in adoption.

The trial court also properly examined respondent-father's history of compliance with the service plan. Although respondent-father had participated in some services, the trial court found that respondent-father lacked interest in parenting. Respondent-father missed 17 parenting-time opportunities and, at the time of termination proceedings in December 2023, had not seen JEM since the end of July 2023. Further, the trial court noted that JEM and respondent-father were reported to lack a bond.

Respondent-father argues that the trial court's best-interest determination was flawed because respondent-father would have had a greater opportunity to bond with JEM had JEM been placed with relatives. As previously explained, however, the DHHS attempted to move JEM to a relative placement, and the trial court considered the move, finding that it was not in JEM's best interests. Moreover, respondents displayed problematic behaviors related to IM's relative

placement. The foster-care worker explained that the DHHS had considered guardianship, but, because of respondents' actions related to IM and because of JEM's young age, adoption was in his best interests. The trial court did not err by finding that termination was in JEM's best interests.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron